IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

JIMMY POWELL,

    Petitioner,

v.                                                              Case No. 15-CV-640

TROY HERMANS,[1]

    Respondent.

---

## DECISION AND ORDER

Jimmy Powell, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Habeas Pet., Docket # 13.) Powell was convicted of first-degree reckless injury and sentenced to twenty-three years in prison, consisting of thirteen years of initial confinement followed by ten years of extended supervision. (*Id.* at 2.) Powell contends that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Powell's conviction arose from "a drug deal gone bad." (*Wisconsin v. Powell*, 2013AP1111 (Wis. Ct. App. Mar. 27, 2014), Docket # 15-5 ¶ 1). As summarized by the court of appeals, the facts are as follows.

On the afternoon of April 30, 2009, Robert Rabe and his friend Ryan Ryckman were together at Rabe's automobile repair shop. (*Id.* at ¶ 3.) Rabe had $900 in cash in his pocket.

---

[1] Since the filing of this action, Powell has been transferred from Fox Lake Correctional Institution (Warden Hepp) to Oregon Correctional Center (Warden Hermans). (Docket # 30.)

(*Id.*) Late in the evening, Rabe contacted his regular source of cocaine, Powell. (*Id.*) Rabe and Ryckman met Powell at a remote location with dim lighting. (*Id.*) Ryckman had never met Powell before, and Powell testified that he had never seen Ryckman before. (*Id.*)

When Rabe and Ryckman arrived, Rabe parked his vehicle, got out, approached Powell's vehicle, and got in the passenger side to complete the drug transaction. (*Id.* at ¶ 4.) Ryckman stayed in Rabe's vehicle. (*Id.*) There was an altercation that eventually left Rabe outside, but very near, Powell's vehicle and Powell inside the vehicle. (*Id.*) Powell sped off with his headlights off, running over Rabe and causing serious injury. (*Id.*)

Ryckman testified that, while he was waiting in Rabe's vehicle, he thought the "deal" was taking too long, so he exited and started walking toward Powell's vehicle. (*Id.* at ¶ 5.) Ryckman testified that as he walked toward Powell's vehicle, he saw Rabe getting run over. (*Id.*) Ryckman said he approached Rabe, who was seriously injured. (*Id.*) Ryckman took out his cell phone and called 911. Ryckman did not know where they were, but he attempted to give 911 location information so that help could be sent. (*Id.*)

Meanwhile Powell returned to the scene, with his vehicle headlights still off. (*Id.* at ¶ 6.) Powell approached Ryckman and Rabe, who was lying on the ground. (*Id.*) Ryckman testified that Powell pushed him to the ground and struggled with him over the phone. (*Id.*) The phone was sheared in half, ending the 911 call. (*Id.*) Powell testified that he dropped the half of the phone that ended up in his hand, got back in his vehicle, and drove off. (*Id.*) Ryckman had the other half of the phone in his hand when police arrived. (*Id.*) Disputed expert testimony and a knife found at the scene supported the view that Powell cut Rabe's throat with a knife before or after Powell's struggle with Ryckman. (*Id.*) At the same time, the defense expert and one of the State's experts opined that Rabe's sliced throat could have been

caused by Powell's vehicle. (*Id.*) Police were unable to locate Rabe's $900 in cash. (*Id.*)

Powell was charged with attempted first-degree intentional homicide, armed robbery, and first-degree reckless injury. (*Id.* at ¶ 2.) The prosecution's theory was that Powell observed that Rabe had a large amount of cash and attempted to take it from Rabe, leading to an altercation after which Powell ran over Rabe as he sped away, returned to the scene and interfered with Ryckman's attempt to summon help, and attempted to kill Rabe, who was the only person likely to be able to identify Powell. (*Id.* at ¶ 7.) Powell's trial counsel admitted that Powell was at the scene and that Powell hit Rabe with Powell's vehicle, but argued that it was an accident. (*Id.* at ¶ 8.) The defense pointed to conflicts and ambiguities in the evidence. (*Id.*) Powell's counsel further argued that it made no sense that Powell would attempt to rob and kill a long-term source of money. (*Id.*) After a four-day trial, (Docket # 15-18, # 15-21), the jury found Powell not guilty of attempted first-degree intentional homicide or armed robbery, but found him guilty of first-degree reckless injury (Docket # 15-1).

On appeal, Powell challenged the trial court's admission of evidence regarding Powell's history of drug dealing, the trial court's omission of a jury instruction relevant to Powell's defense, and a supplemental instruction to the jury that Powell argued misstated the law and created a mandatory presumption. (Docket # 15-2.) Powell also argued ineffective assistance of counsel and insufficiency of the evidence, as well as for return of bail money to the posters. (*Id.*) On March 27, 2014, the court of appeals rejected his arguments and affirmed. (Docket # 15-5.) The Wisconsin Supreme Court denied Powell's petition for review. (Docket # 15-8.) Powell also filed a motion for postconviction relief arguing ineffective assistance of trial counsel and postconviction counsel, the denial of which was upheld by the court of appeals on October 25, 2015. (Docket # 15-12.) The Wisconsin Supreme Court denied review

on February 13, 2017. (Docket # 15-15.)

Powell filed a petition for a writ of habeas corpus in this court on May 27, 2015. (Docket # 1.) On July 8, 2015, I issued an order staying the case pending exhaustion at the state level. (Docket # 9.) On June 30, 2017 I issued an order reopening the case and directing Powell to file a new petition. (Docket # 12.) Powell filed his amended petition on July 12, 2017, and it is now the operative petition in this case. (Docket # 13.) The matter is now fully briefed and ready for resolution.

## STANDARD OF REVIEW

Powell's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

4

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

Habeas relief is available only for state court decisions that are contrary to federal law. This court may not review whether a state court properly applied its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

"The operative decision under review is that of the last state court to address a given claim on the merits." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Greene v. Fisher*, 565 U.S. 34 (2011). In this case, there are two operative decisions: (1) the court of

appeals decision of March 27, 2014 adjudicating Powell's claims of trial court error and ineffective assistance of counsel (Docket # 15-5), and (2) the court of appeals decision of October 25, 2016 on Powell's claims of ineffective assistance of trial and postconviction counsel (Docket # 15-12).

## ANALYSIS

Powell's amended petition argues that he is entitled to a writ of habeas corpus due to (1) ineffective assistance of trial counsel for failing to object to a supplemental jury instruction, (2) insufficiency of the evidence that Powell showed utter disregard for human life as necessary to convict him of first-degree reckless injury, (3) trial court error in allowing evidence of a ten-year drug dealing relationship between Powell and Rabe, and (4) sentencing based on inaccurate information. (Docket # 13 at 6–9.)

    1.    *Supplemental Jury Instruction*

        1.1.    Ineffective Assistance of Counsel

Powell's first ground for relief is that his trial counsel was ineffective for failing to object to a supplemental jury instruction that Powell argues misstated the law and created a mandatory presumption. (Docket # 13 at 6–7, Docket # 23 at 16–22.)

At trial, the jury was provided with instructions on the elements of first-degree reckless injury, which included:

> The third element of first degree reckless injury is that the circumstances of the defendant's conduct showed utter disregard for human life.
>
> In determining whether the conduct showed utter disregard for human life, you should consider these factors: What the defendant was doing; why the defendant was engaged in that conduct; how dangerous the conduct was; how obvious the danger was; whether the conduct showed any regard for human life; and all other facts and circumstances relating to the conduct.

(Docket # 15-21 at 220–21.) During deliberations, the jury asked two questions of the court:

6

> Please provide us with a definition of "utter disregard for human life"?
> Is there a time element associated with this utter disregard? (before, during, after)

(Docket # 15-2 at 84.) After an off-the-record discussion among the court and the parties, the court generated this response:

> The law for "utter disregard for human life" has already been provided to you. There is no additional legal guidance on this definition.
>
> In this case, the crime of First Degree Reckless Injury involves the period of time while Mr. Powell is engaged in conduct related to operating his motor vehicle. It does not include conduct by Mr. Powell after Mr. Rabe had been run over.

(Docket # 15-2 at 85.) On the record, the parties agreed that this answer was proper. (Docket # 15-5 ¶ 234–36.)

Powell argues that this supplemental jury instruction misstated the law in that it forbade the jury to consider Powell's behavior before and after Rabe was run over, while the law requires the jury to consider the totality of the circumstances. (Docket # 23 at 17–22.) Powell believes that his actions before and after could have constituted mitigating evidence, for example, if Powell returned to see if Rabe was okay or to ensure help was summoned. (*Id.*) Powell also argues that the instruction created a mandatory presumption because it "told the jury that Powell's driving his vehicle was conduct that involved first degree reckless injury so if the jury found Powell drove his vehicle he would be guilty of first degree reckless injury which Powell admitted to." (*Id.* at 21.) Powell thus argues that counsel was deficient for failing to object to this instruction. (*Id.* at 17–22.)

The State contends that the supplemental instruction did not misstate the law or prevent the jury from considering the totality of the circumstances, so Powell's counsel was not ineffective for failing to object. (Docket # 26 at 11–21.) The state contends that the answer

properly clarified that the conduct causing injury at issue was Powell's driving off in his vehicle, not any other acts such as Powell's role in the altercation with Rabe or Powell's actions when he returned to the scene. (*Id.*)

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Powell must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a

8

"reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.*

In this case, the court of appeals, citing *State v. Williams*, 2006 WI App 212, ¶ 18, 296 Wis. 2d 834, 723 N.W.2d 719, identified the standard for ineffective assistance of counsel, which mirrors the standard articulated by the Supreme Court in *Strickland*. Having identified the appropriate standard, the court of appeals concluded that there was no deficiency because the instruction accurately responded to the jury's question. (*Id.* ¶ 42–48.) The court explained that it was apparent from the record, including the testimony of trial counsel at the postconviction hearing, that the parties and the circuit court believed the jury not to be asking whether they could consider the totality of the circumstances, but for guidance on what injury-causing conduct was at issue. (*Id.* ¶ 46.) "Given the series of events before, during, and after

9

Rabe was run over, the jury obviously questioned exactly what alleged conduct it should focus on when deciding whether such conduct was criminally reckless." (*Id.* ¶ 47.) The court of appeals opined that "there was no reason to suppose that the jury questioned whether it could consider all of the circumstances when deciding whether particular conduct was criminally reckless." (*Id.*) The court pointed out that, on the contrary, the jury instructions given prior to deliberations instructed the jury that when it was determining the utter disregard element, it could consider "the circumstances of the defendant's conduct," "why the defendant was engaged in that conduct," "whether the conduct showed any regard for life," and "all other facts and circumstances relating to the conduct." (*Id.* ¶ 47.) Thus, the court concluded that counsel was not deficient for failing to object to the instruction.

To my mind, Powell argues persuasively—more persuasively than the court of appeals credited him for—that the jury instruction was misleading, if not actually erroneous. At the postconviction hearing, trial counsel for Powell stated that counsel's interpretation of the jury instruction was essentially the one Powell advances: that it limited the circumstances the jury could consider to Powell's actions in the vehicle:

> Q: So did you see any reason to object to that . . . information the court provided the jury in response to their question?
> A: Yeah. I actually recall, um, feeling a little surprised that the court limited it that much. And I was sort of expecting the court to say, um, you know, and consider all the circumstances. But the court actually limited it to just the period when Mr. Powell was inside the car. And I felt that was favorable to Mr. Powell.
> Q: So you didn't object?
> A: I didn't object. I liked it because it had the effect of limiting it so the jury wouldn't be able to consider anything outside the car. It was only when he was in the car, which is really as limited as you can get.
> [. . .]
> And I would just add that, um, also before—before he got in the car, there was also—there was a fist fight. There was a time when it was alleged Mr. Powell had kicked open the door and knocked Mr. Rabe down. So, again, none of that was really, according to the court's answer, was in play. So that's why I liked

10

> it because there were things that happened that injured Mr. Rabe before and after. So if we're limiting it to just the time that Mr. Powell is operating the vehicle, I felt that was the best possible result for Mr. Powell.

(Docket # 15-25 at 35–36, 46.) In light of this testimony, it does not appear that Powell's trial counsel shared the view that the jury instruction merely specified that the conduct at issue was the operation of the vehicle; rather, counsel interpreted it as forbidding the jury from even considering anything that happened outside the car.

However, the issue before me for habeas review, and that the court of appeals addressed, is not whether the jury instruction was correct. The question is whether trial counsel was ineffective for failing to object to it. On that question, the court of appeals' conclusion that counsel was not deficient was a reasonable one. In the above testimony, trial counsel clearly stated that the decision not to object was strategic. The prosecution's theory was that Powell had attacked and robbed Rabe, run over him with his vehicle, returned to slit his throat with a knife, and interfered with Ryckman's attempt to summon help. A reasonable attorney could have concluded that an instruction preventing the jury from considering anything but Powell's activity while driving the vehicle would help, rather than hurt, Powell. This is precisely the sort of strategic decision to which deference is owed to trial counsel under *Strickland*. Thus, Powell is not entitled to habeas relief on this claim.

### 1.2. Erroneous Jury Instruction (Stand-Alone Claim)

Powell also urges this court to treat the claim as a stand-alone claim of erroneous jury instructions. (Docket # 23 at 2–16.) The State argues that the court of appeals disposed of this claim on an independent and adequate state ground because Powell did not object to it at trial, and that Powell procedurally defaulted the claim by not raising it in his petition for review before the Wisconsin Supreme Court or in his habeas petitions in this court. (Docket

# 26 at 8–10.) Powell replies that even if the claim is procedurally defaulted, the circumstances of this case warrant excusal of the default. (Docket # 29 at 1–3, 5–11.)

As an initial matter, although Powell's petition identifies his claim as one of ineffective assistance of counsel, the facts he alleges in the petition to support the claim reflect a stand-alone claim of erroneous jury instructions.[2] (Docket # 13 at 6–7.) As Powell is proceeding *pro se*, I will construe his petition liberally to include the stand-alone claim and accordingly do not find that he defaulted his claim by failing to raise it in his petition.

When a "state court does not reach a federal issue because of a state procedural bar, the issue cannot be raised" in a federal writ for habeas corpus unless the petitioner can show cause and prejudice. *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998) (citing *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977)). To conclude that a petitioner has procedurally defaulted a claim due to an adequate and independent state ground, this Court "must be convinced that the last state court to consider the question actually relied" on a procedural ground "as the basis for its decision." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (internal citations omitted). The state court's reliance on a procedural rule therefore must be explicit. *See id.* Furthermore, "the state's procedural rule must be both 'firmly established and regularly followed,'" applied consistently and frequently, and will not be an adequate ground for procedural default "if the prisoner 'could not fairly be deemed to have been apprised of its existence' at the time [he] acted." *Id.* (internal citations omitted).

Procedural default may be overcome by a showing of "cause" excusing the default and resulting "prejudice." *Rodriguez v. Young*, 906 F.2d 1153, 1158–59 (7th Cir. 1990) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). In some cases, ineffective assistance of counsel may

---

[2] I note that the same is true of Powell's petition for review to the Wisconsin Supreme Court. (Docket # 15-6 at 18–23.)

12

excuse the default if the ineffectiveness rises to the level of a constitutional deprivation. *Id.* at 1159. Additionally, procedural default may be overcome in certain cases where there would otherwise be a deprivation of due process resulting in a fundamental miscarriage of justice. *Id.* at 1159 (citing *Murray v. Carrier*, 477 U.S. 478 (1986)).

In this case, the court of appeals refused to adjudicate the stand-alone claim because Powell had not objected to the jury instruction at trial. (Docket # 15-5 ¶ 42 n.2.) Wisconsin case law consistently holds that a challenge to a jury instruction is forfeited if not raised at the trial court level. *State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727. The normal procedure in criminal cases is to address unpreserved claims only within the rubric of ineffective assistance of counsel, rather than as stand-alone claims. (Docket # 15-5 ¶ 42 n.2; Docket # 15-3 at 7–8 (citing *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d. 749 (1999)).) Because the court of appeals' rejection of Powell's stand-alone challenge to the jury instruction was based on an independent and adequate state procedural ground—that he failed to object to the jury instruction at trial—federal habeas relief is not available on this claim.

Powell argues that the ineffective assistance of his counsel constitutes "cause" for not objecting and satisfies the first prong of *Wainwright*. (Docket # 29 at 2.) However, as explained above, counsel reasonably believed that this instruction worked in Powell's favor, and thus his failure to object was not constitutionally deficient. As for the "due process" exception, this is an exceedingly high standard and offers relief only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496. Powell has not alleged any set of facts sufficient for me to conclude that the jury instruction, even if erroneous, probably resulted in his conviction

13

despite his actual innocence. Thus, I see no basis for overcoming the procedural default here.

  2.  *Ineffective Assistance of Counsel: Presentence Information ("PSI")*

Powell's habeas petition states that he is entitled to relief because his sentence was based on inaccurate information. (Docket # 13 at 9.) However, the claim Powell presented to the state courts and elaborates in his brief is styled as a claim of ineffective assistance of counsel for failing to argue that the information in his PSI report was inaccurate. (*State of Wisconsin v. Jimmy L. Powell*, 2015AP2540 (Wis. Ct. App. Oct. 25, 2016); Docket # 23 at 22–24.) Because Powell is proceeding *pro se*, I construe his petition liberally to state both the stand-alone claim and the ineffective assistance claim. Additionally, while Powell argued ineffective assistance of both trial and postconviction counsel at the state level, his briefs in this court only argue ineffective assistance of trial counsel. (Docket # 23 at 22–24; Docket # 29 at 11–12.) Thus, I deem his ineffective assistance of postconviction counsel claim abandoned and proceed only on the ineffective assistance of trial counsel claim.

The court of appeals explained that the PSI recommended a sentence including ten to twelve years of initial confinement. (*Id.* at 3.) At the request of the State, the Department of Corrections filed a letter with the circuit court stating that the PSI author had not considered the acquitted charges in making her recommendation. (*Id.*) The State then filed a sentencing memorandum in which it pointed out that the court could consider the facts underlying the acquitted charges, highlighted those facts, and recommended fifteen years of initial confinement. (*Id.*) The circuit court stated it did not know what the PSI's sentencing recommendation would have been had the PSI author considered that information, and proceeded to impose thirteen years of initial confinement. (*Id.* at 3–4.)

If this issue is framed as one of ineffective assistance of counsel, the two-pronged

14

*Strickland* analysis applies. If it is framed as a stand-alone claim of violation of the right to be sentenced based on accurate information, Powell must show both that the information before the sentencing court was inaccurate and that the sentencing court relied on the inaccurate information in the sentencing. *United States v. Tucker*, 404 U.S. 443 (1972); *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003).

In its 2016 decision, the court of appeals concluded that counsel's performance was not deficient because the information before the court was accurate. (Docket # 15-12.) The court of appeals concluded that the DOC letter did not present inaccurate information, but rather accurately stated that the PSI author did not consider acquitted charges. (*Id.* at 4.) Thus, the court concluded, counsel was not deficient for failing to object to the information before the court. (*Id.* at 4.)

Powell contends that it was unreasonable to conclude that the information presented to the court was accurate. (Docket # 22 at 23–24.) Powell argues that the letter was inaccurate because it led the court to believe that, had the PSI author included the acquitted charges, the sentence recommendation would have been higher. (Docket # 23 at 23–24.) Upon scrutiny of Powell's arguments, it appears that Powell objects not so much to the letter's accuracy as to the use the State made of it and to the trial court's interpretation of it. (Docket # 29 at 11–12.) Powell argues, in essence, that had counsel objected and clarified that the PSI sentence recommendation could not have considered the two acquitted charges under DOC policy at the time, the judge would have taken the PSI recommendation at face value and followed it, rather than inflating it based on conjecture about what the PSI author would have recommended otherwise. (*Id.* at 12.)

Even if the letter could be or was misinterpreted by the court, or if the State had

nefarious motives in presenting it, these do not make the information inaccurate. The court of appeals' conclusion that the information before the court was accurate and that counsel did not act deficiently in failing to object was not contrary to or an unreasonable application of federal law, or an unreasonable determination in light of the facts presented to it. Therefore, Powell is not entitled to habeas relief on this ground.

      *3.     Other Claims*

In his petition, Powell contended that there was insufficient evidence of utter disregard for human life to support a conviction for first-degree reckless conduct, and that the trial court erroneously admitted evidence of Powell's prior drug dealing. (Docket # 13 at 7–8.) However, Powell did not raise or elaborate these claim in either his opening brief or his reply brief. I conclude that Powell has abandoned these claims. *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007); *Duncan v. State of Wis. Dept. Health and Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999).

**CONCLUSION**

To obtain habeas relief, Powell must show that the state court's decisions were contrary to or an unreasonable application of federal law. Although the challenged jury instruction was not ideal, the court of appeals' determination that Powell's counsel had not been defective in failing to object to it was not unreasonable under *Strickland*. Furthermore, the court of appeals' conclusion that the information presented at sentencing was accurate was not an unreasonable determination of the facts in light of the evidence presented to it. Finally, Powell's claims of insufficient evidence and trial court error in admitting other acts evidence have been abandoned. Accordingly, Powell's claims do not present a basis to grant relief under 28 U.S.C. § 2254. The petition will therefore be denied and this case dismissed.

# CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Powell is not entitled to habeas relief. Thus, I will deny Powell a certificate of appealability. Of course, Powell retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Powell's petition for a writ of habeas corpus (Docket # 13) is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of March, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge